**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MR. RODGER SOUDERS and MRS. DANA BOLLMAN, | ) |
| Plaintiffs, | ) |
| | ) Case No.: |
| vs. | ) |
| MR. GUY LANDMEIER, MRS. GINGER LANDMEIER, MR. LOGAN LANDMEIER, | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs, Mr. Rodger Souders and Ms. Dana Bollman ("Plaintiffs"), for their complaint against Mr. Guy Landmeier ("Guy"), Mrs. Ginger Landmeier ("Ginger"), and Mr. Logan Landmeier ("Logan"), individually (and collectively hereinafter as "Defendants"), allege as follows:

## I. Introduction and Overview

1. Since December 19, 2023, Plaintiffs have been judgment creditors of Guy, resulting from a claim based on the Illinois Consumer Fraud and Deceptive Business Practices Act related to home improvement work that the Plaintiffs contracted with Guy to perform.

2. The case against Guy has resulted in a judgment that, with accrued interest and a subsequent attorney fee award, is now more than $60,000,000 against Guy.

3. Since the entry of that Judgment, Guy has led Ginger (Guy's wife) and Logan (Guy's son), in a scheme ("Asset Protection Scheme") to cause the proceeds of business ventures controlled by Guy to be funneled into and between a complex web of banking accounts which are accessible by and controlled by Guy, but held in the name of Ginger and Logan, so as to utilize artifices, misrepresentations and concealment to place Guy's assets beyond the reach of his legitimate creditors in violation of federal and state law.

4. To do so, all of the Defendants have taken steps, among other things: (i) to shield and conceal Guy's assets from judgment creditors; (ii) to transfer those assets out of the reach of their creditors; and (iii) to conceal from those creditors and the Courts transfers of those assets to and for the benefit of Guy ("Aims of the Asset Protection Scheme").

5. By its very nature and design, the Asset Protection Scheme consisted and consists of income earned by Guy in his business ventures being deposited directly into accounts in the names of his wife and child all of which have created a state of affairs whereby Guy is, on the surface, judgment proof.

6. The conspiracy, racketeering activity and myriad fraudulent transfers alleged in this complaint were each and all designed to achieve the Aims of the Asset Protection Scheme.

7. A core element of the Asset Protection Scheme is G&L Decorating and Professional Painting ("G&L") a business run as a d/b/a by Guy which serves as his sole source of income, the customer payments of which are being paid into the accounts of Ginger and Logan, but not Guy. All of the acts of those Defendants in furtherance of the Asset Protection Scheme were undertaken with the intent and effect of harming Plaintiffs, and other creditors.

## II. Jurisdiction and Venue

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 & 1964.

9. In addition, this Court has supplemental subject matter over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Supplemental subject matter jurisdiction is conferred over these causes of action pursuant to 28 U.S.C. § 1367 because: (i) this Court has original jurisdiction over this action; and (ii) Plaintiffs' state law claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. Guy has transacted business exclusively in Illinois, all the Defendants reside in Illinois and all the acts complained of herein occurred within the State of Illinois.

## III. Parties

11. Plaintiffs are individuals who are husband and wife and who currently reside in the City of Geneva, Illinois.

12. Defendants are currently residents of South Elgin, Illinois.

13. Beginning in or prior to 2023, the Defendants collectively began to plan, execute and conceal the Asset Protection Scheme by, among other acts, establishing and maintaining bank accounts in the names of Ginger and Logan over which Guy had access and control and to utilize for his personal and business purposes.

14. In or prior to 2023, Guy retained Ginger and Logan to work with him to plan, execute, conceal and further the Asset Protection Scheme.

15. Ginger and Logan, along with Guy, led and actively participated in the establishment of the bank accounts primarily to" to advance the Aims of the Asset Protection Scheme.

16. Among other things, Ginger and Logan allowed for Venmo payments (at Guy's direction) from customers of G&L to be directly deposited into accounts held in their names at Guy's direction even though neither of them were employed by Guy or G&L

17. Additionally, the Defendants participated in and allowed for sizable cash deposits from G&L customers and withdrawals to Guy from those accounts on which Guy was not an account holder.

## IV. <u>Conspiracy, Aiding and Abetting, Agency</u>

18. Beginning in or prior to late 2022 and continuing until the present day and beyond, the Defendants entered into a conspiracy, common enterprise, and common course of conduct, the purpose and effect of which was to achieve the aims of the Asset Protection Scheme.

19. Through the establishment and operation of the aforementioned bank accounts, Ginger and Logan were direct, necessary, and substantial participants in the conspiracy, common enterprise, and common course of conduct complained of herein, and acted as the agents for Guy in the course of the wrongdoing described herein.

20. Although Plaintiffs contend that all of the Defendants were full participants in the Asset Protection Scheme, in the alternative, Plaintiffs also alleges that Ginger and Logan aided and abetted and rendered substantial assistance in the accomplishment of the scheme and artifice to defraud complained of herein.

21. In taking the actions particularized here to aid, abet and substantially assist in the commission of the Asset Protection Scheme set forth here, the Defendants other than Guy acted recklessly, or with an awareness of the primary wrongdoing, realized that the conduct would substantially assist in the accomplishment of the fraud, and each was aware of his/her overall contribution to and furtherance of the conspiracy, common enterprise, and common course of conduct.

22. The Defendants' acts of aiding and abetting include, among other things, all the acts that they are alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of, except those relating solely to the reaching of agreements or understandings sufficient to categorize their conduct as conspiratorial.

23. The Defendants participated in, aided and abetted, conspired to affect, and consciously pursued the unlawful conduct alleged herein to hinder, delay, and defraud Guy's creditors and to enrich all the Defendants at the expense of Plaintiffs and other creditors.

## V. Motives Behind The Defendants' Creation of the Accounts to Protect and Conceal Guy's Assets

24. The claim (and later judgement debt) of Plaintiffs against Guy and the aggressive pursuit thereof is one reason the Defendants have and continue to pursue the current Asset Protection Scheme acting to protect the money of Guy from Plaintiffs and other creditors.

25. Various tribunals and courts have rendered a good number of judgments against Guy, thereby increasing the motivation to protect his assets from the reach of creditors.

26. The sheer age of the judgments other than the Plaintiffs reveals that at the time the Defendants started the Asset Protection Scheme, including the creation and continued use of bank accounts in the name of Ginger and Logan, none of them have any intention of ceasing their course of pervasive fraud.

27. It was therefore foreseeable that private creditors would pursue the assets of Guy and it was necessary to secret them in the way they did.

## COUNT I
## SUBSTANTIVE RACKETEERING

28. Plaintiffs realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

29. Each of the Defendants was a "person" as that term is defined in 18 U.S.C. §1961(3), engaged in, and the activities of which affected, interstate commerce.

30. Those Defendants were associated in fact and constituted an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise is referred to for purposes of this Complaint as the "Asset Protection Enterprise." The Asset Protection Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

31. Beginning in or prior to 2023 the Defendants each being a "person" as that term is defined in 18 U.S.C. § 1961(3), did knowingly maintain, directly or indirectly, control of, and conducted and participated in, directly or indirectly, the Asset Protection Enterprise, which was engaged in, and the activities of which affected, interstate

commerce, through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and (5).

32. The Defendants, and others, misrepresented, concealed, hid, and caused to be misrepresented, concealed, and hidden, the purposes of and the acts done in furtherance of the Asset Protection Enterprise.

33. The racketeering activity in which the Defendants engaged in violation of 18 U.S.C. 1962(b) and (c) consisted, *inter alia*, of numerous predicate offenses as set out below.

34. Beginning in 2022, the Defendants committed wire fraud in violation of 18 U.S.C. §1343 including the deposit into and withdrawal of monies (and use of same as a front) an account in the names of Ginger and Logan which belonged to Guy as a result of his business operation, G&L.

35. Examples of such transfers to and from that account, ending in 2910 at Chase Bank, in the name of a Logan C. Landmeier or Ginger Landmeier are as follows:

a. 12/16/22-Zelle deposit of $2,000.00.

b. 2/1/23-Online deposit of $1,600.00.

c. 2/1/23-Online deposit of $120.00.

d. 2/10/23-Online transfer of $300.00.

e. 3/3/23-Online transfer of $600.00.

f. 3/13/23-Online transfer of $300.00

g. 3/27/23-Online transfer of $200.00

h. 3/27/23-Online transfer of $643.00.

i. 3/28/23-Online deposit of $300.00.

j. 3/30/23-Online transfer of $1,400.00.

k. 4/3/23-Online transfer of $100.00.

l. 4/4/23-Online transfer of $147.00.

m. 4/14/23-Online transfer of $622.00.

n. 4/17/23-Online deposit of $210.00.

o. 4/17/23-Online transfer of $1,200.00.

p. 4/18/23-Online deposit of $450.00.

q. 4/18/23-Online deposit of $250.00

r. 4/18/23-Online deposit of $100.00

s. 4/24/23-Online deposit of $100.00.

t. 4/28/23-Online transfer of $100.00.

u. 4/28/23-Online transfer of $208.00.

v. 4/28/23-Online transfer of $250.00.

w. 5/01/23-Online transfer of $150.00

x. 5/02/23-Online transfer of $300.00.

y. 5/02/23-Online transfer of $300.00.

z. 5/04/23-Zelle payment of $2,000.00.

36. The above is a small sampling of these transactions as the list is extensive and it continues unabated through the present day, only discovered by Plaintiffs when they served a third-party citation to discover assets on Chase Bank.

37. On or about the dates set forth above in the manners therein described, Defendants in violation of 18 U.S.C.§ 1343, for the purpose of executing and attempting to execute the aforementioned Asset Protection Scheme, did knowingly transmit and cause to be transmitted, in a matter effecting interstate commerce, by means of wire communication, the writings, signs, and signals set forth above, proof of any one of which is sufficient to establish necessary Predicate Acts.

38. The aforementioned acts were committed with the intent to promote the carrying on of specified unlawful activity, to wit, wire fraud in furtherance of the Asset Protection Scheme in this case; and knowing and having reason to know that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source,

the ownership, or the control of the proceeds of specified unlawful activity, as detailed above.

39. The transactions above constituted fraudulent transfers and hiding the assets of Guy which served no purpose other than to hinder, defraud, or delay a known or reasonably foreseeable creditor.

40. As a direct and proximate result and by reason of the foregoing violations of 18 U.S.C. § 1962(b) and (c), Plaintiffs have been injured in their business or property because they have been unable to collect their judgment against Defendant and their and have been forced to expend considerable time and resources investigating and exposing the Asset Protection Scheme.

41. Because of this injury to Plaintiffs, they are entitled to recover herein treble damages, the costs of bringing this suit, and his attorneys' fees.

**COUNT II – RACKETEERING CONSPIRACY**

42. Plaintiffs realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

43. Beginning in or about 2022 and continuing at least until the filing of this Complaint, Guy, Ginger and Logan, being persons associated in fact, which association in fact engaged in, and the activities of which affected, interstate commerce, did knowingly conspire and agree, with each other and others known and unknown, to conduct and participate, directly and indirectly, in the Asset Protection Scheme, which is described in detail above, through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and (5), in violation of 18 U.S.C. § 1962(b) and (c).

44. All of the Defendants named herein did knowingly conspire and agree with each other and with others, known and unknown, to conceal the assets of Guy as well as the transfers to and control of various monies of Guy as income derived, directly and indirectly, from a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and (5), and to use, directly and indirectly, some or all of that income and the proceeds of that income in the operation of the Asset Protection Enterprise, that engaged in and whose activities affected interstate and foreign commerce violation of 18 U.S.C. § 1962(a).

45. The foregoing pattern of racketeering activity consisted, *inter alia*, of the various racketeering acts set forth in Count I of this Complaint, which acts are realleged herein.

46. As a direct and proximate result and by reason of the foregoing violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property because

they have been unable to collect their judgment against Guy and have been forced to expend considerable time and resources investigating and exposing the Asset Protection Scheme.

47. As a consequence of this injury to Plaintiffs' business or property, they are entitled to recover herein treble damages, the costs of bringing this suit, and their attorneys' fees.

**COUNT III – AIDING AND ABETTING, CONSPIRING TO COMMIT, AND PARTICIPATING IN FRAUDULENT TRANSFERS**

48. Plaintiffs realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

49. Guy directed or made the numerous transfers of funds enumerated above with actual intent to hinder, delay, or defraud Guy's creditors, including Plaintiffs.

50. Ginger and Logan conspired and participated with and aided and abetted Guy in the Asset Protection Scheme and in making the aforementioned transfers.

51. The numerous transfers of funds enumerated above were made with actual intent to hinder, delay, or defraud because, *inter alia* the transfers were to insiders – *e.g.*, directing money earned by Guy to be paid to his son, Logan, through a Zelle transfer.

52. In addition, Guy retained possession or control of the funds and property so transferred as described herein.

53. The transfers were undisclosed and concealed. Guy has repeatedly made false statements or material misrepresentations or material omissions to Plaintiffs and counsel regarding his control over assets held in the names of others.

54. Furthermore, Guy, with the extensive assistance of Ginger and Logan, concealed numerous transfers regarding the assets referenced in this pleading, *e.g.*, by causing funds to be transferred through multiple accounts not in the name of Guy, thereby shielding the funds from creditors.

55. Moreover, throughout the collection efforts of Plaintiffs and continuing to date, Guy has made every effort to conceal his ability to control any of the assets.

56. And in his Citation to Discover, Guy has testified falsely and evasively about that control.

57. Finally, thanks to the production of documents including bank records, the Plaintiffs learned of the extent of the Asset Protection Scheme perpetrated by the Defendants.

## COUNT IV – CIVIL CONSPIRACY

58. Plaintiffs reallege and incorporate by reference the allegations made in each of the proceeding paragraphs.

59. Defendants conspired to commit the Asset Protection Scheme.

60. Defendants collectively agreed to participate in the Asset Protection Scheme by virtue of agreeing to have money flow through the bank accounts in the name of Ginger and Logan which rightfully belonged to Guy.

61. The purpose of the Asset Protection Scheme is to ensure that the assets of Guy do not become known to Plaintiffs, their judgment creditor.

62. In agreeing to partake in the Asset Protection Scheme, the Defendants performed the "overt act" of essentially laundering money in order to conceal the true and accurate assets of Guy.

63. These acts of concealment by Defendants furthered the agreement or conspiracy to prevent Plaintiffs or the courts from being able to properly identify the specific assets of Guy.

64. The conspiracy surrounding Defendants is one created to accomplish the unlawful purpose of concealing assets from a judgment creditor.

65. This conspiracy caused injury to the Plaintiffs, that compounded the financial injury done to them by Guy.

66. Without knowing or being able to accurately evaluate the assets of Guy, Plaintiffs are unable to obtain the funds they are owed as a judgment creditor.

## COUNT V – VIOLATION OF THE FRAUDULENT TRANSFER ACT 740 ILCS 160/5(a)

67. Plaintiffs realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

68. Defendants violated Section 5 of the Illinois Fraudulent Transfer Act in that they with intended to hinder, delay, and defraud Plaintiffs who was owed a liquidated debt.

69. In or before 2023, Guy began fraudulently transferring funds when the claims of the Plaintiff were first made and continued to do so after the Judgment Order was entered against him in favor of Plaintiffs.

70. Guy clearly made the monetary transfers described herein with actual intent to hinder, delay, or defraud the judgment creditor, Plaintiffs, since he created the Asset Protection Scheme and failed to pay the judgment.

WHEREFORE, Plaintiffs pray for judgment as follows:

a. Awarding Plaintiffs compensatory damages in an amount to be proven at trial, together with pre-judgment interest;

b. Awarding Plaintiffs treble damages pursuant to 18 U.S.C. § 1964(c) of RICO;

c. Requesting this Court to enter an order declaring Guy to be the rightful owner of those accounts in the names of Ginger and Logan and that it enters a turnover order of those accounts and assets;

d. Awarding Plaintiffs their costs and expenses incurred in this action, including reasonable attorneys' fees, accountants' fees, and expert fees;

e. Awarding Plaintiffs punitive damages to the extent allowable by law; and

f. Such other and further relief as the Court deems just and proper.

DATED: 11/05/2024

Respectfully submitted,

**Rodger Souders and Dana Bollman**

By: /S/Chris Cosentino
One of their attorneys

Chris Cosentino
The Cosentino Law Firm, LLC
226 S. Batavia Avenue
Batavia, IL 60510
630-377-9730
ARDC #6272089